No. 17,099.

## JOHNSON *v*. THE BOARD OF COMMISSIONERS OF RANDOLPH COUNTY.

JURISDICTION.—*On Appeal.—Amount in Controversy, How Ascertained.*
—Where the plaintiff recovers a judgment in the trial court for only a part of his claim, and is dissatisfied therewith and appeals to this court, the amount in controversy in such appeal is the amount of the difference between his judgment and his claim.

SAME.—*Supreme Court.—Constitutionality of Statute.—Amount of Recovery.*—Where the issues presented make it necessary to decide as to the constitutionality of a statute, the jurisdiction, on appeal, is in the Supreme Court, notwithstanding the amount in controversy is less than $3,500.

CONSTITUTIONAL LAW.—*Statute Impairing Obligation of Contract.— Attempt to Release County Treasurer and His Bondsmen from Liability*

Johnson *v.* The Board of Commissioners of Randolph County.

*for Money Lost.*—An act by the Legislature to release a county treasurer and the sureties on his official bond from all liability on account of money in his hands as county treasurer, and which he had lost by depositing the same in a bank, and by the subsequent failure of the bank, is void as impairing the obligation of a contract.

From the Randolph Circuit Court.

*E. L. Watson, J. W. Macy* and *J. P. Goodrich,* for appellant.

*O. A. Marsh* and *J. W. Thompson,* for appellee.

McCABE, J.—This suit was begun by filing a claim against the county of Randolph before the board of commissioners of that county, by the appellant, for a money demand on the contract of said board with another, $4,310.19 of which had been assigned by that person to the appellant.

On the hearing before the board there was allowed to appellant, on said claim, $2,243.53, and the balance thereof was disallowed, to wit, $2,066.66.

The appellant being dissatisfied with such allowance in his favor, appealed to the circuit court. In that court the appellee filed three paragraphs of an answer of set-off, to which demurrers for insufficiency of facts were overruled.

Upon the issues formed there was a trial by the court without a jury, resulting in a finding and judgment for appellant, over his motion for a new trial, for $2,243.53.

Appellant being again dissatisfied with the amount of his recovery, prosecutes this appeal. We are thus confronted with the question of the jurisdiction of this court to entertain this appeal. All actions seeking the recovery of a money judgment only, where the amount in controversy, exclusive of costs, does not exceed $3,500 on appeal, fall within the exclusive jurisdiction of the Appellate Court. Burns R. S. 1894, section 1336; Acts 1893, p. 29.

What is meant by "the amount in controversy" is the amount in controversy or actually in dispute in the court to which the appeal is taken, and not the amount in controversy in the trial court, where the amount in controversy in the two courts is not the same. It has been held by this court that where a plaintiff recovers in the trial court a judgment for a part only of his claim, and is dissatisfied therewith and appeals to this court, the amount in controversy on such appeal is the amount of the difference between his judgment and his claim, or the amount of the excess of his claim over the amount of his judgment. *Reed* v. *Sering*, 7 Blackf. 135.

The same rule prevails on appeals to the Supreme Court of the United States under statutes very much like ours. *Carne* v. *Russ*, 152 U. S. 250; *Tintsman* v. *Nat'l Bank*, 100 U. S. 6.

The amount, therefore, in controversy on this appeal is the difference between appellant's claim and the judgment he recovered in the circuit court, and that is only $2,066.66, which would exclude the jurisdiction of this court unless the case is brought within some exception to that rule. Subdivision first of the exceptions to section 1336, *supra*, provides that "the Appellate Court shall not have jurisdiction where the constitutionality of a statute, Federal or State, * * * is in question, and such question is duly presented."

Some troublesome questions have been eliminated from the case by the following written agreement between the parties, read in evidence on the trial:

"It is agreed by and between plaintiff and defendant, as a part of the facts in this case: First, that the monument in question mentioned in the plaintiff's claim was, prior to the filing of the claim by the plaintiff herein, completed according to contract and accepted by the defendant, the board of commissioners of the county of Ran-

dolph, and that the amount of $4,310.19, with interest from the date of filing, April 11, 1892, was and still is due the plaintiff as assignee of A. A. McKain, upon said contract, less any sum that may be due to the defendant on its set-off filed in this case.

"Second. That the amount in controversy, and claimed by the defendant to be due upon its set-off, is $2,000, for which the plaintiff claims credit by reason of an act of the Legislature, approved March 5, 1891, p. 121, for his relief.

"Third. That there is due to the defendant from the plaintiff, upon the set-off filed in this case, the sum of $2,000, with 6 per cent. interest thereon from the 8th day of September, 1891, and the defendant has a right to recover said sum and have the same deducted from the amount due the plaintiff upon his claim and complaint herein, unless the said act of the Legislature of the State of Indiana, approved March 5, 1891, *supra*, for the relief of the plaintiff, has the effect of relieving him from the payment of said sum, and preventing the defendant from recovering the same.

"Fourth. It is further agreed that in the event the court finds the act of the Legislature referred to invalid, the amount due the plaintiff in this case is $2,-243.53."

The act of the Legislature referred to has a very lengthy preamble to it, reciting at great length the circumstances under which appellant became treasurer of said county, and that he had deposited certain public moneys, coming into his hands as such treasurer, in a certain bank which had failed, and a receiver for said bank was appointed by the circuit court of said county, and that on a full settlement by such receiver appellant had received as dividends $2,000 less than the amount so deposited, and that by said failure of

.said bank said sum had been wholly lost without any fault or negligence on the part of said Johnson, and that the taxpayers of each township in said county had petitioned the General Assembly to pass a law releasing him from liability on his bond for the amount so lost. Therefore, the act then reads:

"Section 1. Be it enacted by the General Assembly of the State of Indiana, That Isaac V. D. R. Johnson, treasurer of Randolph county, Indiana, and his bondsmen be and hereby are released from all liability on account of the loss of any part of said funds because of the failure of said banking house of C. L. Lewis & Co."

The second section declares an emergency and that the act shall be in force from and after its passage.

One of the grounds on which the validity of this statute was assailed in the circuit court was that its enactment was procured by appellant through deceit, falsehood and fraud practiced by him on the Legislature, and a large part of the able and voluminous briefs of counsel on both sides here have been devoted to the discussion of the question whether such fraud is sufficient to vitiate the act. But the appellee also seeks to uphold the finding and judgment of the trial court on the ground that the act is unconstitutional. The appellant contends that it is not in conflict with any provision of the constitution. Thus the constitutionality of a statute is in question and seems to be duly presented. *Dowell* v. *Talbot Paving Co.*, 138 Ind. 675.

If the act referred to is unconstitutional, then no question arises as to its invalidity on account of the alleged fraud in the procurement of its passage, as such an attack on it presupposes the passage of an act not in violation of any constitutional restriction. If the act is in violation of such constitutional restriction, then it is void and is as if no act had been passed at all. If no

act had been passed at all, inquiry as to fraud in the procurement of its passage would be idle and useless. We, therefore, do not decide whether the act can or can not be overthrown for the alleged fraud in the procurement of its passage. It follows from what we have said, that the decision of the question raised by the assignment for error of the overruling of the motion for a new trial, alleging as one of its grounds that the finding was contrary to law, makes it necessary to decide the question discussed in the briefs, whether the act in question is constitutional or not. The jurisdiction to determine this appeal is therefore in this court and not in the Appellate Court, although the action seeks a recovery of a money judgment only and the amount in controversy is less than $3,500.

The act, both in the preamble and in the body thereof, purports to be an attempt on the part of the Legislature to release the appellant and his sureties on his official bond, from all liability on account of the $2,000 of money in his hands as county treasurer, and which he had received in his official capacity, and which he had lost by depositing the same in a bank and by the subsequent failure of the bank. The act could not have been any more violative of the Constitution, both State and Federal, if it had provided that the obligation of the bond be, and the same is, hereby abrogated and annulled. Because, if the Legislature can release a party from a part of the obligation of his contract, it can release him from all of it. Both Constitutions forbid the Legislature to pass a law impairing the obligation of contracts. See section. 247, article 1, of the State constitution; 1 Burns R. S. 1894, section 69 (R. S. 1881, section 69); U. S. constitution section 10, Burns R. S. 1894 (section 10, R. S. 1881, section 10).

A similar statute was held to violate these constitu-

tional restrictions in *McClelland, Tr.,* v. *State, ex rel.,* 138 Ind. 321.

We, therefore, hold that the act referred to was and is void because it violates the constitutional provisions above referred to. This leads to the conclusion that the circuit court did not err in overruling the motion for a new trial.

The judgment is affirmed.

Filed Dec. 11, 1894; petition for rehearing overruled Feb. 6, 1895.